Joseph TAORMINA, Plaintiff,

v.

INTERNATIONAL UNION,
et al., Defendants.

No. 90 Civ. 6999 (VLB).

United States District Court,
S.D. New York.

Sept. 7, 1992.

---

Michael H. Sussman, Goshen, N.Y., for plaintiff.

Ralph P. Katz, White Plains, N.Y., and Mark L. Heinen, Gregory, Moore, Jeakle, Heinen, Ellison & Brooks, Detroit, Mich., for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case involves dismissal of a guard at a nuclear facility for failure to make a complete search of a designated area after receipt of an alarm. It appears that failure to state accurately what search had been made may also have been a factor in the dismissal.

Plaintiff sues the local union representing him as collective bargaining agent and its parent international union (collectively "union"). He asserts breach by the union of its duty of fair representation for failing to pursue his grievance to arbitration. Plaintiff claims there was an informal custom at the nuclear facility not to conduct the complete search of the designated area called for by the instructions and training given to the plaintiff.

Plaintiff's grievance was presented at the initial stages permitted by the collective bargaining agreement, and was rejected by the company. The union did not seek arbitration and allowed the deadline for doing so to expire; the union's position was that the grievance lacked sufficient merit.[1] Although there seems to have been some hostility between plaintiff, a union shop steward, and the president of the local, there is no evidence of invidious discrimination or any other evil motive behind failure to take plaintiff's complaint to arbitration.

Because of the obvious sensitivity surrounding nuclear facilities and the undisputed failure of plaintiff to search the required area, management could well have acted reasonably and properly in dismissing plaintiff. Thus under the applicable legal standards outlined below, plaintiff's union, which had an implied duty fairly to represent all employees in the bargaining unit, was not required to pursue plaintiff's grievance to arbitration after its rejection by management during the initial steps of the grievance procedure.

### II

The duty of a collective bargaining representative to represent fairly all employees within the bargaining unit is not set forth in any express statutory provision, or in any provision of the collective bargaining agreement involved in this case. The duty is, instead, implied from the authority granted collective bargaining agents by our national labor laws to act on behalf of the employees in the bargaining unit. The doctrine was first articulated by Chief Justice Stone in *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), barring racial discrimination against some railway employees for the benefit of other employees who were members of the union involved. The Court indicated that a union acting for employees had a duty to them somewhat analogous to that owed by a legislature to its constituents under the Equal Protection

---

1. Plaintiff points out that the decision on the merits came after the deadline for requesting arbitration had passed, but this is irrelevant if the grievance was not one which the duty of fair representation would have required the union to pursue.

Clause. Id. at 202. Although initially implemented under the Railway Labor Act, it has long been recognized that the obligation of fair representation, as a corollary to the authority to bargain for all employees in a unit, also binds to collective bargaining agents under the National Labor Relations Act. See *Breininger v. Sheet Metal Workers*, 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989); *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990).[2]

■ The *Steele* doctrine does not permit a court to substitute its judgment for that of the collective bargaining agent as to whether a particular grievance does or does not have merit, nor does it require a union to pursue all possible procedures and grievance steps on behalf of a complainant. The union has "undoubted broad authority as exclusive bargaining agent in the negotiation *and administration* of a collective bargaining contract," *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 368, 11 L.Ed.2d 370 (1964), quoted in *Breininger* 493 U.S. at 88, 110 S.Ct. at 437 (emphasis added by the Court in *Breininger*). See also *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

The approach mandated by the Supreme Court in *Humphrey* and *Breininger* is critical to the congressionally mandated structure for labor-management negotiation and private resolution of disputes through the collective bargaining process. See 29 USC 171; *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). If the courts were to sit as labor arbitrators making independent determinations as to who should or should not be disciplined by a private employer, several consequences inconsistent with our national labor policy would follow. Private parties—employers and employees represented by unions—would lose the ability to structure the governance of the workplace, since federal judicial involvement would extend to the wisdom and appropriateness of each personnel decision.

Unions would be compelled to pursue almost every grievance to arbitration because of the risk of lawsuits, putting more meritorious grievances at a disadvantage because of employer hostility, and clogging the arbitration system. See generally Eisenberg, *Private Ordering Through Negotiation: Dispute Settlement and Rulemaking*, 89 Harv.L.Rev. 637 (1976). While union recognition is mandated by federal law when a majority of employees has opted for union representation, the additional judicial review phase would constitute, in effect, a semi-automatic penalty for union recognition which would run counter to national labor policy. The workload of the federal courts would be expanded in a manner never intended or authorized by Congress.

The significance of some of these consequences may be highlighted in this case, where disciplinary action was taken in the context of protecting nuclear facilities.

The importance of safety in nuclear facility management has been made clear by congressional action (42 U.S.C. 2131–2140) and regulatory implementation (10 CFR pt 50), under which each plant develops its own safety precautions as a condition of obtaining or retaining a federal license. See generally *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 550, 98 S.Ct. 1197, 1215, 55 L.Ed.2d 460 (1978).[3]

**2.** *Terry* upheld a Seventh Amendment claim to trial by jury in any action against an employer for breach of a collective bargaining contract and against a union for breach of the duty of fair representation, on the ground that the essence of the case sounded in contract.

The duty of fair representation is, however, nonconsensual in nature, being imposed by law; a claim of breach of such a duty appears more akin to an equitable one for breach of trust than to a contract claim. A claim against a union only for breach of the duty was not involved in *Terry*. The jury trial issue need not be confronted in this case, in view of the disposition made of the present motion.

**3.** Public policy in the nuclear area mandates that employers be permitted to insist upon fulfillment of all assigned duties even if a labor contract would point the other way. See *Iowa Electric Light & Power Co. v. Local Union 204*, 834 F.2d 1424 (8th Cir.1987). Here, of course, both union and employer have aligned themselves in favor of allowing management's action to stand.

National policy permitting employers to insist upon strict fulfillment of duty by security personnel in sensitive facilities is, indeed, not confined to nuclear facilities, see cases cited in *Iowa Electric* at 1428, but is clearly preeminent in that context. I note that N.Y. Labor Law 740 protects employees reporting safety hazards, but its reach does not extend to those responsible for failure to act as required to minimize such hazards.[4]

### III

The union in this case did not violate any federally imposed duty, and summary judgment is therefore granted dismissing the complaint.

SO ORDERED.

---

**4.** In this context, and because the union was not a party to it, *New York State Labor Relations Board v. Holland Laundry*, 294 N.Y. 480, 63 N.E.2d 68 (1945), I give no weight to an unemployment insurance decision allowing plaintiff to obtain benefits.