**Lorenzo CHAMBERS, Plaintiff,**

v.

**TRM COPY CENTERS CORPORATION, Defendant.**

**No. 92 Civ. 2896 (VLB).**

United States District Court, S.D. New York.

Feb. 24, 1994.

---

Michael H. Sussman, Goshen, NY, for plaintiff.

Joseph DeGiuseppe, Jr., TRM Copy Centers Corp., White Plains, NY, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case is an employment discrimination suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* arising out of termination of the plaintiff Lorenzo Chambers ("Chambers") as an employee of the defendant TRM Copy Centers Corporation ("TRM"). Subject matter jurisdiction is premised upon 28 U.S.C. §§ 1331 and 1343. TRM has moved for summary judgment under Fed.R.Civ.P. 56. The motion is granted.

### II

Chambers, a dark-skinned employee of Jamaican origin, asserts that he worked satisfactorily for TRM until dismissed without any articulated reason. Chambers' supervisor was Black.

TRM asserts as grounds for its motion that there were two sets of nondiscriminatory bases to support Chambers' dismissal:

(a) Chambers was the subject of complaints and negative observations by coworkers and customers, and

(b) Chambers violated a TRM rule against moonlighting by retaining a prior job after coming to work for the employer and failed to disclose his intention to keep his other job when hired; TRM discovered the alleged rule infraction after Chambers was terminated on other grounds.

Chambers was hired in July 1989. He never was given any written negative job evaluation or written warning that his work needed improvement until April 13, 1990, seven (7) days before he was dismissed without explanation.

### III

■ In addition to plaintiff being a member of a group against which discrimination may be suspected ("protected class"), being qualified for the position, and not being hired (or retained), the circumstances must permit an inference of unlawful discrimination in order for a triable claim to be presented under any of the antidiscrimination statutes. *Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir1991); *Meiri v. Dacon*, 759 F.2d 989 (2d Cir), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *Stanojev v. Ebasco Services*, 643 F.2d 914, 919 (2d Cir1981).

Unless a party having the burden of proof submits evidence establishing a genuine issue of material fact, summary judgment dismissing the claim is appropriate. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a claim is "implausible," the claimant "must come forward with more persuasive evidence ... than would otherwise be necessary." *Matsushita Electric Industrial Co v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### IV

■ The evidence supporting Chambers' claim consists of the following elements:

(a) His race and national origin would qualify him as a member of a group regarded as having been subject to discrimination ("protected class");

(b) He was at least initially deemed qualified for the work involved and was never told that he was fired for inadequacy;

(c) He was fired.

No statistical evidence of discrimination by the employer (TRM) has been submitted. The workforce of TRM employees at the Elmsford Service Center where Chambers was employed consisted of 5 Caucasians, 4 African–American or dark-skinned West Indians, 2 Asians and 1 Hispanic.

There is no evidence of prejudiced comments, nor has any reason been proffered to suggest that Chambers' Black supervisor or others at TRM (which hired Chambers in the first instance) harbored any hostility based on his race or national origin. Chambers has presented no affirmative reasons to suspect discrimination, but attacks the credibility of TRM's asserted justifications for its action in dismissing him.

### V

TRM's effort to provide specific nondiscriminatory grounds for dismissing Chambers would, standing alone, be subject to genuine dispute and cannot be accepted as a basis for granting summary judgment. Dispute as to the accuracy of TRM's version of why Chambers was dismissed does not, however, create a genuine issue of *material* fact unless TRM's version is so incredible as to support an adverse inference, or there is other sufficient evidence of discrimination on the part of TRM. Neither of these circumstances exists.

### VI

While affidavits showing weaknesses in Chambers' performance have been provided after this litigation was launched, he was given no written warning prior to one week before his dismissal—hardly a period of time providing an opportunity to show job improvement. No reasons for the actual decision to dismiss Chambers were provided to him.

■ Failure to explain equivocal behavior, incredibility of a party's factual submissions, or gaps in them, may be sufficient to justify an adverse inference concerning its behavior. See *Interstate Circuit v. United States*, 306

U.S. 208, 225–26, 59 S.Ct. 467, 473–74, 83 L.Ed. 610 (1939); *Caminetti v. United States*, 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442 (1917); *Brink's, Inc. v. City of New York*, 717 F.2d 700 (2d Cir1983); *United States v. Costello*, 275 F.2d 355, 358 (2d Cir), *aff'd* 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *United States v. Von Clemm*, 136 F.2d 968, 970 (2d Cir), *cert. denied*, 320 U.S. 769, 64 S.Ct. 81, 88 L.Ed. 459 (1943); *United States v. Zafiro*, 945 F.2d 881 (7th Cir1991), *aff'd on other points* — U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *Chorbajian v. Goldhirsch Group*, 814 F.Supp. 333 (SDNY1992).

■ Inadequacy of an employer's justification for adverse personnel action does not, however, in itself constitute affirmative evidence of discrimination. *St. Mary's Honor Center v. Hicks*, —— U.S. ——, ———–——, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407 (1993). Nor is paperwork to support personnel actions required by the antidiscrimination laws. Absence of documentation does not indicate that discrimination exists, nor does it constitute a shield preventing the courts from inquiring into the actual behavior involved. See *Watson v. Fort Worth Bank & Trust Co*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).[1]

The size of the facility involved, consisting of twelve (12) employees, suggests that formalistic managerial practices were not necessarily to be expected. Especially given the ethnic mix of the staff, error rather than ethnic bias was far more likely the reason for failure to give more adequate advance notice to Chambers concerning his perceived deficiencies, and failure to provide him with formal reasons for his dismissal.

TRM's explanation for its behavior neither supports summary judgment in favor of TRM nor supports an adverse inference that would buttress Chambers' claim of discrimination.

### VII

■ Violation of an anti-moonlighting policy combined with, or threatening to lead to

---

1. For one viewpoint, see Martin & Bartol, "The Legal Ramifications of Performance Appraisals," 17 Employee RelLJ #2 at 257 (Autumn 1991).

inattentiveness or sloppy work, especially in a sensitive position, may constitute a genuine work-related nondiscriminatory basis for adverse personnel action.[2]

If significantly harmful behavior has occurred or is threatened, the right of the employer to take appropriate action is important to the public as well as the employer. See *Taormina v. International Union,* 798 F.Supp. 193 (SDNY1992) (security guard at nuclear plant failed to complete inspection of area after alarm); *DeCintio v. Lawrence Hospital,* 797 F.Supp. 323 (SDNY1992) (gender-related expletives directed at co-worker in hospital).

If, thus, TRM's complaints about Chambers' conduct were undisputed or unaccompanied by weaknesses in TRM's own reaction to such complaints, Chambers' violation of TRM's anti-moonlighting rule would strengthen TRM's contention that the dismissal was proper regardless of whether the violation was discovered later or not. See generally Brown, "Employee Misconduct and the Affirmative Defense of 'After-Acquired' Evidence," 62 Fordham LRev No 2 at 381 (Nov1993); Kauere & Dristsas, "When What You Didn't Know Can Help You—Employers' Use of After-Acquired Evidence of Employee Misconduct to Defend Wrongful Discharge Claims," 27 Bev Hills BA J 117 (Summer 1993).

### VIII

There are no statistical, anecdotal or other specific indicia of ethnic bias. Chambers' supervisor, also Black, showed no animus against Jamaicans. Nor is there any other evidence suggesting that anything more than an informal method of management at TRM was responsible for the debatable circumstances of Chambers' dismissal.

While TRM's affirmative explanations present genuine issues of fact which cannot be resolved on summary judgment, they are not so outlandish as to support an adverse

inference supporting Chambers' claim of discrimination. Consequently Chambers' discrimination claims must fall of their own weight.

SO ORDERED.

---

**2.** Defendant attaches a copy of an unpublished decision of the Fourth Circuit in accord with the above statement. That Circuit permits citation of such rulings if provided to opposing counsel and the court and if counsel submitting it deems it the best authority available. *Mack v. Aiken Elec Coop,* 978 F.2d 1255 (4th Cir.1992). Use of such a citation may be as much a confession of weakness as a sign of strength, but the unpublished ruling is in accord with the conclusion that would appear appropriate even absent such authority.