Joseph RIBANDO, Plaintiff,

v.

SILHOUETTE OPTICAL, LTD. and Pierre Fay, Individually and as President of Silhouette Optical, Ltd., Defendants.

No. 94 Civ. 5155 (VLB).

United States District Court,
S.D. New York.

Dec. 21, 1994.

Kenneth Moran, Greenbaum & Moran, Pearl River, NY, for plaintiff.

Alan Kanzer, Walter, Conston, New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This diversity of citizenship suit was originally brought by plaintiff, an executive of the defendant Silhouette Optical Ltd., on the ground that his employer improperly fired him for accepting an elective position as mayor of a locality in New York.

Defendants have moved to dismiss the now-pending second amended complaint, which adds allegations of violations of New York's Human Rights Law (Executive Law 298–a), its whistleblower law (Labor Law 740), New York Election Law Article 17, and the New York and federal Constitutions.

■ Defendants' motion to dismiss is granted with respect to the New York Labor Law 740, which is limited to matters involving health or safety hazards, New York Election Law article 17 which provides no private right of action, the New York and Federal Constitutions, which contain no pertinent self-executing provisions, and abusive discharge based upon his election to and acceptance of public office, discussed in part III below.

No violations of the first three sources of law are adequately alleged; plaintiff has abandoned these claims in his memorandum of law, which focuses exclusively on whether the facts of the case are adequately connected with New York, plaintiff's Human Rights Law claim and a claim for abusive discharge on account of his election to and acceptance of public office.

The abusive discharge claim cannot survive for the reasons set forth below; I convert defendants' motion with respect to the Human Rights Law claim into a motion for summary judgment under Fed.R.Civ.P. 56 and reserve decision on the motion as to that claim.

### II

■ With respect to plaintiff's surviving claims, defendants' motion is converted into a motion for summary judgment under Fed. R.Civ.P. 12(b)(6) and 56. Pursuant to *Celotex v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), each party is requested to submit within thirty (30) days of the date of this memorandum order sufficient information to establish the existence of a genuine issue of material fact with respect to the plaintiff's surviving claims and defenses to them. See *Jacobson v. Cohen,* 151 F.R.D. 526 (S.D.N.Y.1993).

### III

■ Our Federal and State Constitutions do not in general operate directly on individuals except when improperly exercising public sector authority, although federal as well as state laws enacted under applicable constitutional provisions do operate directly upon individuals. Instead, our constitutional structures establish machinery for the respective governments, authorize their functions, and impose limitations upon the scope of those functions and means for their implementation.

■ The right to participate in government is critical to our Republic and is protected by the First and Fourteenth Amendment. See *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 534–35, 11 L.Ed.2d 481 (1964); *United States v. Carolene Products Co.,* 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234 (1938). This protection applies to governmental entities directly by virtue of the Constitution; statutory provisions provide further protection against either governmental or individual misconduct contrary to such protection. At least explicitly, these statutory protections apply to voting rather than seeking or accepting public office. See Voting Rights Act of 1965, 42 U.S.C. § 1973; Civil Rights Act of 1957, 42 U.S.C. § 1971; Civil Rights Enforcement Act of 1871, 42 U.S.C. § 1985; Federal Criminal Code (Title 18 U.S.C.) § 241; see Note, "Private Economic Coercion and the Civil Rights Act of 1957," 71 Yale LJ 537 (1962).

Ability of the public to implement its choice of public officers is an essential means of making exercise of the franchise effective. At the times of the Declaration of Indepen-

dence and of the drafting and ratification of the Constitution, it is well known that holders of public office did not ordinarily pursue them as full-time occupations. This is evident from the difficulty caused when the location of a legislative body was moved to a place inconvenient to its members, leading the framers of the Declaration to charge King George III for having "called together legislative bodies at places unusual, uncomfortable and distant from the depository of their Public Records, for the sole purpose of fatiguing them into compliance with his measures."

The importance of ability of the public to select its leaders through exercise of the franchise does not necessitate imposing involuntary continuance of public officials in private employments where the public duties may interfere with the private ones. Nor has any inability of the public to find appropriate representatives on its own initiative or through political parties been found, such as would lead legislative bodies to undertake to add discrimination against public office holders to the categories prohibited by employment laws such as Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) or the New York Human Rights Law.

The situation here does not involve use of public sector authority to reward any particular political affiliation, a practice forbidden where such affiliation is not important to an employee's duties. See authorities cited, *Hering v. Hill,* 814 F.Supp. 356 (S.D.N.Y. 1993). Instead, the nature of the public sector accepted by plaintiff may create incompatibilities with the private sector position from which plaintiff was dismissed.

■ Although "the provisions of the Constitution ... are organic living institutions [with significance which is] vital, not formal," *Gompers v. United States,* 233 U.S. 604, 610, 34 S.Ct. 693, 695, 58 L.Ed. 1115 (1914), any proposed extension of impact of constitutional provisions or statutes based upon their scope should take into account the anticipated "sober second thought of the community," Stone, "The Common Law in the United States," 50 Harv.L.Rev. 4, 25 (1936). Caution is indicated where courts are asked to interpolate such a category as a right to

continuation of private employment at an executive level even if the employer objects to the employee's acceptance of an executive level public office. While blanket moonlighting prohibitions, especially if not uniformly and evenhandedly enforced, may at times be suspect, see *Chambers v. TRM,* 844 F.Supp. 183 (S.D.N.Y.1994), an executive level public servant is almost certain to attract both favorable and unfavorable attention. Unfavorable reactions to the person of a marketing executive may well risk causing adverse business consequences to the executive's employer. Controversy inherent in executive office in the public sector may also divert the core of the incumbent's attention away from private sector duties. These are adequate reasons for an employer to object to coexistence of potentially incompatible executive positions such as were sought by plaintiff.

## IV

In regard to plaintiff's Human Rights claim, plaintiff is requested to furnish in full details to the extent known to him any illegal discrimination alleged against him, precisely what reports of other discrimination he made, when, to whom and with what consequences, including the grounds for any connection between such reports and his dismissal. Plaintiff is also requested to furnish authority for finding that whatever particular kinds of events are set forth constitute a violation of the Human Rights Law, and provide plaintiff with standing to sue with respect to any such violation.

## V

■ With respect to plaintiff's claims against Pierre Fay, plaintiff is requested either to dismiss such claims voluntarily or indicate some reason to believe that his presence as a defendant is necessary to complete relief. Otherwise, inclusion of an unnecessary defendant is contrary to the court's obligation under Fed.R.Civ.P. 1 as amended in 1993 to seek the "just, speedy and inexpensive" determination of the action. See *Chambers v. Capital Cities,* 851 F.Supp. 543 (S.D.N.Y.1994); *Archer v. Globe Motorists Supply,* 833 F.Supp. 211 (S.D.N.Y.1993).

## VI

The sanction for failure to respond adequately to any of the above requests will be that the court may draw an adverse inference or rule against a defaulting party on the merits for failure to establish a genuine issue with respect to a claim or defense. See Fed.R.Civ.P. 37, including 37(c)(1).

SO ORDERED.