896 F.2d 1318
 16 Fed.R.Serv.3d 710, 20 Envtl. L. Rep. 20,626
 MANASOTA-88, INC., Plaintiff-Appellee,
v.
Greer C. TIDWELL, Sr., Regional Administrator for Region IV,
et al., Defendants,
State of Florida Department of Environmental Regulation,
Intervenor-Defendant,
and
Florida Electric Power Coordinating Group, Inc., Appellant.
 No. 89-3110.
 United States Court of Appeals,
Eleventh Circuit.
 March 22, 1990.
 
 William H. Green, James S. Alves, Tallahassee, Fla., for appellant.
 Thomas W. Reese, St. Petersburg, Fla., Martin W. Matzen, Dirk D. Snel, U.S. Dept. of Justice, Washington, D.C., for Federal defendants Dehigns and others.
 Douglas H. MacLaughlin, State of Florida Dept. of Environmental Regulation Tallahassee, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 TUTTLE, Senior Circuit Judge:
 
 
 1
 This is an appeal by Florida Electric Power Coordinating Group ("FCG") from an order of the trial court denying FCG's motion for intervention as of right or permissive intervention in an action brought by ManaSota-88, Inc. ("ManaSota-88"), a public interest organization, against the United States Environmental Protection Agency ("EPA"), its administrator ("Administrator"), and the regional administrator ("Regional Administrator") for an area including the State of Florida ("the State").
 
 I. STATEMENT OF THE CASE
 
 2
 Plaintiff filed a citizen suit pursuant to the Clean Water Act ("the Act"), 33 U.S.C. Sec. 1251 et seq., and the Administrative Procedure Act ("the APA"), 5 U.S.C. Secs. 701-706, seeking a declaratory judgment as to whether the EPA failed promptly to prepare and publish regulations for Florida which were consistent with the Act and whether the EPA violated the Act or the APA by approving substandard water quality regulations promulgated by Florida's Department of Environmental Regulation ("DER"). In addition, plaintiff requested the court to order defendants (i) to promulgate certain revisions to Florida's water quality standards to make them consistent with federal requirements; (ii) to identify Florida waters where water quality standards are not being met; and (iii) to establish standards consistent with the Clean Water Act for those water bodies identified.
 
 
 3
 FCG filed a motion for intervention of right pursuant to Federal Rule of Civil Procedure 24(a)(2)[1] and, in the alternative, permissive intervention, pursuant to Rule 24(b).[2] FCG is a non-profit association of thirty-eight electric power generation facilities that discharge treated waste waters into Florida's surface waters. FCG contended that it had a significant, protectable interest related to the action brought by ManaSota-88 because FCG members are required to comply with water quality standards and effluent limitations promulgated pursuant to the Clean Water Act. The district court determined that FCG demonstrated neither a sufficient interest in the issues raised by the ManaSota-88 claims nor that its economic interests will be impeded by disposition of that action. The court also declined to allow permissive intervention pursuant to Rule 24(b). This appeal followed.
 
 II. FACTS
 
 4
 The Clean Water Act requires each state to adopt water quality standards applicable to intrastate waters and submit them to the Administrator of the EPA for his review, to determine whether the standards are consistent with the minimum requirements of the Act. 33 U.S.C. Sec. 1313. Once a state adopts its initial water quality standards, it is required to hold hearings to review those standards at least once every three years (the triennial review) and adopt new or revised standards as necessary. 33 U.S.C. Sec. 1313(c)(1). The results of each triennial review are to be made available to the Administrator.[3] Id. Any revised or new standards must be submitted to the Administrator. Id. Sec. 1313(c)(2)(A). If the Administrator determines that the revised or new standards are not consistent with the applicable requirements of the Act, the state must be notified within ninety days of the date of submission of the standards, with necessary changes specified. Id. Sec. 1313(c)(3). If the changes are not adopted by the state within ninety days, the Administrator must "promptly prepare and publish proposed regulations setting forth a revised or new water quality standard" for the state. Id. Sec. 1313(c)(4). "The Administrator shall promulgate any revised or new standard" within ninety days of publication unless the state has adopted a standard in the interim which conforms to the Act. Id.
 
 
 5
 Each state must adopt as part of its water quality standards an "antidegradation policy" consistent with and at least as stringent as the federal antidegradation rule. 40 C.F.R. Sec. 131.12. The federal rule applies to waters of relatively high quality and prescribes the conditions, if any, under which a state may permit those waters to be degraded to a lower quality level. For outstanding national resource waters ("ONRWs"),[4] such as national or state parks, wildlife refuges, and waters of exceptional recreational or ecological significance, the quality of the waters must be maintained and protected under all circumstances. 40 C.F.R. Sec. 131.12(a)(3).
 
 
 6
 States also must allocate maximum amounts of pollutants which can be discharged daily into waters not meeting quality standards.[5] 33 U.S.C. Sec. 1313(d). The Act required Florida to submit such Total Maximum Daily Loads ("TMDLs") for all state water bodies not in compliance with water quality standards to the EPA by June 26, 1979. Plaintiff alleges that Florida still has not submitted TMDLs for these "noncompliance" water bodies. Plaintiff further alleges that Florida's water quality standards exempt significant sources of pollution discharge, such as stormwater, from the TMDL process; plaintiff seeks EPA disapproval of the Florida rules and replacement of them by the EPA with federal regulations.
 
 
 7
 Florida performed a triennial review in 1985. The standards were approved in part and disapproved in part. Plaintiff alleges that the Regional Administrator advised the DER that Florida had ninety days to comply with the requirements of the Act, until December 23, 1987. ManaSota-88 had sent defendants and the State a notice of intent to sue letter on December 11, 1987. On February 5, 1988, the Regional Administrator acknowledged in a letter to ManaSota-88 that Florida's time in which to comply with the Act had expired and informed plaintiff that he was preparing documentation for the Administrator's review to request publication of proposed regulations by the EPA. On March 30, 1988, ManaSota-88 filed this action against the EPA because no new regulations had been published.
 
 III. DISCUSSION
 A. Intervention of Right
 
 8
 Before intervention as a matter of right will be granted under Federal Rule of Civil Procedure 24(a), four requirements must be met: (1) the application to intervene is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) the applicant's interest will not be represented adequately by the existing parties to the suit. Athens Lumber Co., Inc. v. Federal Election Commission, 690 F.2d 1364, 1366 (11th Cir.1982).
 
 
 9
 The timeliness of FCG's application is not at issue. As to whether FCG has the appropriate interest in the action brought by ManaSota-88, FCG must possess a " 'direct, substantial, legally protectable interest in the proceeding' " and must be "at least a real party in interest in the transaction which is the subject of the proceeding." 690 F.2d at 1366 (citations omitted).
 
 
 10
 Appellee has represented to this Court in its written brief that two principal issues that formed the basis of its suit have been rendered moot by action by the State, relating to chronic toxicity standards and antidegradation provisions. Appellee maintains that only three issues remain which appellee will raise in the trial court: (1) Florida's rule permitting discharge of wastewaters and stormwaters in wetlands; (2) allocations of maximum daily waste loads, or TMDLs, for water bodies which do not meet water quality standards; and (3) the adequacy of the DER's recent revision of the State's antidegradation policy (the revision is not effective until the Florida Legislature ratifies it and designates Everglades National Park and Biscayne Bay National Park as outstanding national resource waters (ONRWs), to which higher antidegradation protection standards apply).
 
 
 11
 One claim plaintiff will press is that the EPA erroneously approved Florida's regulations pertaining to wastewater in wetlands and stormwater in wetlands. If plaintiff is afforded the relief it seeks, the EPA will be required to disapprove the regulations as being inconsistent with the Act. Appellant has failed to allege any protectable interest in the relief sought concerning wetlands. Appellant does not allege that its members discharge into wetlands; appellant's counsel acknowledged at oral argument that FCG members' facilities do not discharge into wetlands, and there is no indication in the record to the contrary. Therefore, appellant has no interest relating to this claim.
 
 
 12
 Plaintiff further intends to object in the trial court to the EPA's approval of the State's failure to identify noncompliance water bodies and assign TMDLs to those water bodies; plaintiff seeks to compel the EPA to promulgate its own standards to fill the gap left by the State's inaction. FCG's asserted interest in this issue relates to the permits FCG members must obtain to operate their facilities. Appellant argues that since the permits require compliance with Florida's water quality standards, any new standards promulgated could cause members to restrict present and future discharges of treated wastewaters in order to comply with the more stringent conditions that would inevitably be attached to the permits, or to lose the permits. At a minimum, it is alleged, FCG members could be exposed to increases in capital and operating costs associated with new treatment technology. At this juncture, however, FCG does not and cannot specify a noncompliance water body into which a utility discharges since, as plaintiff alleges, no noncompliance water bodies have been identified. This identification is what plaintiff seeks to compel, and whether FCG's members discharge into a water body eventually specified as noncompliance is purely a matter of speculation at this time. Although appellant contends that the relief requested could have a profound impact upon the environmental obligations of its member electric utilities, such a generalized grievance does not impart to FCG the kind of legally protectable interest in the ManaSota-88 litigation necessary to support intervention as of right. Chiles v. Thornburgh, 865 F.2d 1197, 1212 (11th Cir.1989).
 
 
 13
 The final issue plaintiff will raise at trial is whether the antidegradation measures recently adopted by Florida's Environmental Regulation Commission, the agency charged by the DER with that task, are sufficient since they must be ratified by the state legislature. At issue are the designations of Everglades National Park and Biscayne Bay National Park as ONRWs. FCG does not allege that any of its members discharge into either water body. Appellant's counsel stated at oral argument that FCG members do not currently discharge treated waters into either of the prospective ONRWs, and the record does not suggest otherwise. Therefore, FCG has no protectable interest in this issue.[6]
 
 
 14
 Based upon appellee's express representations, by which it is bound, see Popham v. City of Kennesaw, 820 F.2d 1570, 1577 n. 2 (11th Cir.1987),[7] that it will limit its claims to those specifically stated in its brief, we hold that appellant has no protectable interest warranting its intervention of right in this action.
 
 
 15
 Moreover, even if FCG asserted a sufficiently particularized interest, disposition of this suit will not as a practical matter impair FCG's ability to protect its interests. Appellant argues, though, that the stare decisis effect of a decision in favor of ManaSota-88 would, as a practical matter, impair its ability to protect its interests during future EPA rulemaking proceedings. As we stated in Chiles, however, "[w]here a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential stare decisis effect may supply that practical disadvantage which warrants intervention as of right." 865 F.2d at 1214 (emphasis added). There, non-felon detainees in a Florida prison were permitted to intervene in an action which sought, in part, to enjoin the government from operating the prison as other than a minimum security facility and to challenge the government's practice of keeping alien felons with nonviolent alien detainees. The detainees were confined in the prison whose operation was being challenged. Id. The detainees had an interest in the government's operation of the prison, which was the very subject of the action in which they sought intervention.
 
 
 16
 Here, appellant does not possess the same type of interest in the main action as the detainees in Chiles, so that a potential stare decisis effect need not even be considered. Furthermore, a potential stare decisis effect does not automatically supply the practical disadvantage warranting intervention. Resolution of ManaSota-88's litigation in its favor will not produce any immediate effect on FCG and will not impede its ability later to be heard if specific rules are developed directly affecting FCG's interests. Appellant acknowledges that it would be permitted to participate in and judicially challenge the results of any court-ordered rulemaking by the EPA, as it states it has done in the past.[8]
 
 B. Permissive Intervention
 
 17
 Rule 24(b)(2) gives the district court discretion to permit intervention "when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The trial court's decision is reviewed only for a clear abuse of discretion. Athens Lumber, 690 F.2d at 1367.
 
 
 18
 Appellant urges reversal because the district court apparently did not consider whether intervention will unduly delay or prejudice the rights of other parties and because no rational basis exists in the record for denying permissive intervention.
 
 
 19
 Although the trial court did not specifically articulate its reasons for denying permissive intervention, we can find no abuse of discretion in the court's denial of FCG's motion. Appellant seeks to inject numerous issues into the case, such as the EPA's authority to require Florida to enact antidegradation standards and plaintiff's standing to sue. Plaintiff commenced this action to hasten compliance with the Clean Water Act, and intervention by FCG would severely protract the litigation. Although we express no opinion as to the merits of plaintiff's claims, an action which seeks to preserve the environment from further deterioration deserves refuge from the undue delay that would result from appellant's intervention.
 
 IV. CONCLUSION
 
 20
 Having concluded that the district court correctly denied appellant's petition to intervene, "our jurisdiction evaporates because the proper denial of leave to intervene is not a final decision." E.E.O.C. v. Eastern Airlines, 736 F.2d 635, 637 (11th Cir.1984).
 
 
 21
 Accordingly, the appeal is DISMISSED.
 
 
 
 [1]
 "Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Rule 24(a)(2), Fed.R.Civ.P
 
 
 [2]
 "Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common...." Rule 24(b)(2), Fed.R.Civ.P
 
 
 [3]
 The Regional Administrator has the authority to approve or disapprove water quality standards submitted by the states. 40 C.F.R. Secs. 131.20(c), 131.21(a)-(b)
 
 
 [4]
 The frequent use of acronyms in this case led us (without the aid of the parties) to compile the following brief "glossary," including the definition of terms as we understand them or as described in the Code of Federal Regulations or elsewhere:
 DER Department of Environmental Regulation of Florida--the State agency responsible for issuing water quality rules to be approved by the EPA.
 Load An amount of matter or thermal energy introduced into a water body.
 OFWs Outstanding Florida Waters--water bodies worthy of special protection because of their natural attributes. See Fla.Stat. Sec. 403.061(27)(a).
 ONRWs Outstanding National Resource Waters--waters designated as of such high quality and significance that their quality shall not be subject to degradation but shall be protected and maintained.
 TMDLs Total Maximum Daily Loads--for waters identified as not meeting applicable water quality standards and not expected to meet them, even after application of technology-based effluent limitations, the total of the individual amounts of permissible load allocated to specific pollution sources that discharge into a water body.
 Water Quality Standards--the State's goal for individual water bodies, consisting of designated uses to be made of the waters and water quality criteria necessary to protect those uses.
 
 
 [5]
 These water bodies of substandard water quality are primarily ones where water quality standards will not be achieved by application of technology-based limitations
 
 
 [6]
 Appellant asserts that its members are particularly concerned about designation of Outstanding Florida Waters (OFWs) as ONRWs; however, ManaSota-88 represents in its brief submitted to this Court that it no longer contends that all OFWs are ONRWs
 
 
 [7]
 In Popham, plaintiff requested a new trial so he would not be bound by the stipulations and admissions of his counsel regarding several of his claims. The court stated: "A party is bound by the admissions and stipulations of his counsel absent a showing of manifest injustice." 820 F.2d at 1577 n. 2
 
 
 [8]
 FCG states in its motion to intervene that "FCG has historically consulted with EPA regarding approval of Florida's water quality standards."